UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT, <br> *Plaintiff*, <br> <br> v. <br> <br> RZ SMOKE, INC., *et al.*, <br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 3:24-CV-190 (SVN) <br> <br> <br> <br> <br> <br> October 16, 2024 |

## **RULING AND ORDER ON PLAINTIFF'S MOTION TO REMAND**

Sarala V. Nagala, United States District Judge.

In this consumer protection action brought by the State of Connecticut (the "State") against Defendants RZ Smoke, Inc., Wajid Rasool, and Majid Rasool under the Connecticut Unfair Trade Practices Act ("CUTPA"), the State alleges that Defendants engaged in deceptive and unfair trade practices with respect to their marketing and selling of certain hemp products. The State initially filed this action in Connecticut Superior Court, Judicial District of Hartford. Defendants removed the action to federal court on the basis of federal question jurisdiction, contending that the State asserts a claim that arises under the Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 (2018) (the "2018 Farm Bill"). *See* Not. of Removal, ECF No. 1 at 3.

The State has moved to remand the case to Connecticut Superior Court, arguing that its claims arise solely under Connecticut law and, therefore, that there is no federal subject matter jurisdiction over this case. The State also seeks an award of fees and costs. For the reasons discussed below, the Court GRANTS the State's motion to remand this action to state court, but DENIES its request for fees and costs.

**I.     FACTUAL BACKGROUND**

    A.  <u>Relevant Statutes</u>

In 2021, Connecticut enacted the Responsible and Equitable Regulation of Adult-Use Cannabis Act ("RERACA"), Public Act 21-1, Conn. Gen. Stat. § 21a-420 *et seq.*, which created a regulated cannabis market for the sale of adult-use cannabis.  Compl., ECF No. 21[1] at 22, ¶ 25.  Under RERACA, "cannabis" means "marijuana, as defined in section 21a-240."  Conn. Gen. Stat. § 21a-420(3).  In turn, section 21a-240 has defined "marijuana" since July of 2023 in relevant part as including any "high-THC hemp product."  Conn. Gen. Stat. § 21a-240(29).  As of October 1, 2024, a "high-THC hemp product" is defined as "a manufacturer hemp product, as defined in section 22-61*l*, that has, or is advertised, labeled or offered for sale as having, total THC that exceeds" certain amounts based on the type of product.  *Id.* § 21a-240(63).  Section 22-61*l*(7) also provides that "'[h]emp' has the same meaning as provided in" the 2018 Farm Bill, which defines "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, . . . , whether growing or not, with a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C. § 1639o(1).

    B.  <u>The Complaint</u>

Defendants Wajid and Majid Rasool are principals of Defendant RZ Smoke, a Connecticut corporation that operates as a wholesale distributor of vaping and edible products that contain a hemp-derived compound known as delta-8 THC.  *See* Compl. ¶¶ 3–5, 38.  The State claims that Defendants use acids and solvents, along with heat, to extract and concentrate the delta-8 THC in their products.  *Id.* ¶¶ 13–14.  Defendants allegedly offer for wholesale distribution products that

---

[1] In this ruling, the Court refers to the copy of the complaint attached to the State's motion to remand, rather than the copy attached to Defendants' notice of removal.  Defendants' copy of the complaint is inexplicably devoid of all punctuation marks that are present in the State's copy and in the complaint filed in the Connecticut Superior Court docket.  *See* Compl., *State v. RZ Smoke, Inc., et al.*, No. HHD-CV24-6178886-S (Conn. Super. Ct. Jan. 9, 2024).

contain, or purport to contain, delta-8 THC levels and total THC levels that exceed the maximum THC levels permitted for cannabis products under RERACA, which the State terms "Intoxicating Hemp Products." *Id.* ¶ 38. The State further alleges that Defendants take advantage of the ambiguity in the 2018 Farm Bill, which does not address THC manufactured from hemp cannabinoids, to circumvent the regulatory structure of RERACA, *id.* ¶¶ 11–14, and claims Defendants "distribute Delta 8 [sic] products to whomever they want—including gas stations and other retailers who may sell to children." State's Br., ECF No. 21 at 6. The State further alleges that these Products are labeled in a manner to appeal to individuals under the age of 21 and employ certain brand names and graphics on their packaging to deceive consumers into believing that the Products are part of Connecticut's regulated cannabis market and subject to strict safety standards. Compl. ¶¶ 46–56.

Based on these allegations, the State brought four CUTPA claims against Defendants. Counts One and Three allege Defendants have engaged in deceptive and unfair business practices, respectively, under Conn. Gen. Stat. § 42-110b(a). *Id.* ¶¶ 57–62, 65–69. Counts Two and Four allege that Defendants have acted willfully to violate CUTPA, triggering certain civil penalties under Conn. Gen. Stat. § 42-110o(b). *Id.* ¶¶ 63–64, 70–71.

Defendants timely removed the action to federal court, arguing that the State's claims present a federal question within the jurisdiction of federal courts because the State asserts a claim that arises under and is completely preempted by the 2018 Farm Bill. ECF No. 1 at 3. The State subsequently moved to remand the action to Connecticut Superior Court and has sought attorney's fees and costs in relation to its motion, contending that the removal was objectively unreasonable. State's Br. at 5, 9.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1441—the general federal removal statute—a defendant may remove a state court action to federal court if the federal court would have original subject matter jurisdiction over the action.  Relevant here, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Federal courts "construe the removal statute narrowly, resolving any doubts against removability . . . out of regard for the rightful independence of state governments."  *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023) (citations omitted).  Defendants bear the burden of proving that removal is proper.  *O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018).

The Court's analysis of whether a case "arises under" federal law is governed by the well-pleaded complaint rule.  *Exxon Mobil Corp.*, 83 F.4th at 132 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  Under that rule, federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint" and cannot be triggered "on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  *Id.* (cleaned up; quoting *Caterpillar*, 482 U.S. at 393).  "In other words, the 'general rule' is that federal courts lack federal-question jurisdiction 'if the complaint does not affirmatively allege a federal claim.'"  *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).

There are "exactly three situations" in which a complaint that does not allege a federal claim may still arise under federal law for purposes of federal subject matter jurisdiction.  *Id.* at 133.  They are:  "(1) if Congress expressly provides, by statute, for removal of state-law claims; (2) if the state-law claims are completely preempted by federal law; and (3) in certain cases if the

4

vindication of a state-law right necessarily turns on a question of federal law." *Id.* (cleaned up; quoting *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014)).

## III. DISCUSSION

The Court holds that it lacks subject matter jurisdiction over this action, and that it must be remanded to Connecticut Superior Court.

It is undisputed that the State has not alleged any federal law causes of action in this matter. Thus, for the action to be properly removable to federal court, one of the three exceptions delineated in *Exxon Mobil* must apply. As to the first exception, it is undisputed that no federal statute creates a right of removal here. As to the second, while Defendants originally argued the State's claims were completely preempted by federal law, *see* ECF No. 1 at 3, they explicitly abandoned this contention at oral argument—for good reason, because there is no federal statute that completely preempts the State's CUTPA claims. Thus, the only remaining question is whether, in this case, "the vindication of a state-law right necessarily turns on a question of federal law." *Exxon Mobil Corp.*, 83 F.4th at 133.

To evaluate this question, the Second Circuit applies the analysis framework set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). *See Exxon Mobil*, 83 F.4th at 139–40. The Court must find that a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (streamlining *Grable* framework). The federal issue Defendants contend this action raises is whether Defendants' products are "hemp" under federal law, the 2018 Farm Bill.[2]

---

[2] Defendants also claimed in their opposition to the State's motion to remand that "application of the 2018 Farm Bill's preemption statute" was an issue to be analyzed under *Grable*, but they abandoned this issue at oral argument.

The Court concludes that vindication of the state law rights provided under CUTPA does not necessarily turn on whether the Intoxicating Hemp Products are "hemp" as defined by the 2018 Farm Bill.  "For a federal issue to be necessarily raised, . . . the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims."  *Exxon Mobil*, 83 F.4th at 140 (cleaned up; citations omitted).  If a court is able to resolve the case without reaching the federal issues, then the claims do not "necessarily raise" a federal issue.  *See New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012).

Here, the question of whether the Products are "hemp" under federal law is ancillary to the central question of whether the Products are packaged and labeled in a manner that deceives potential consumers into thinking that the Products are part of Connecticut's legal, regulated cannabis market.  The THC content of the Intoxicating Hemp Products certainly informs whether CUTPA violations have occurred and are still occurring, but the actual issue is the manner in which Defendants have packaged and marketed the Products.

Importantly, the State's CUTPA claims do not require, as a necessary element, proof that the Products either are, or are not, "hemp," as defined in the 2018 Farm Bill.  Rather, to prove a CUTPA violation for a deceptive trade practice, the State must show:  (1) a representation, omission, or other practice likely to mislead consumers; (2) that consumers interpret the message reasonably under the circumstances; and (3) that the misleading representation, omission, or practice is material, *i.e.*, likely to affect consumer decisions or conduct.  *Exxon Mobil*, 83 F.4th at 140–41 (citing *Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990)).  To plead a CUTPA violation for an unfair trade practice, the State must demonstrate one element:  that a trade practice is unfair.  *Id.* at 141 (citing *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013)).  As explained in *Exxon Mobil*, the

6

State can prove an unfair trade practice in any of three ways: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . ; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businesspersons." *Id.* (cleaned up; citing *Ulbrich*, 310 Conn. at 409). Because the elements of the State's CUTPA claims do not require resolution of the question of federal law—whether the Products are truly "hemp"—that issue is not "necessarily raised" by the State's complaint. *See id.* at 142 (holding that CUTPA claims brought by the State did not necessarily raise a federal issue with respect to "the federal common law of transboundary pollution").[3]

Nor does the complaint meet the other elements of the *Grable/Gunn* test. Because the State's CUTPA claims do not require proof that the Intoxicating Hemp Products either are or are not "hemp" as defined in the 2018 Farm Bill, no federal issue is actually disputed. Even if the question of whether the Products are "hemp" was necessarily raised and actually disputed, though, the issue would have to be "a nearly pure issue of law, one that could be settled once and for all and therefore would govern numerous similar cases," to be considered "substantial." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 145 (2d Cir. 2021) (cleaned up). Determining whether or not the Products are "hemp" as defined in the 2018 Farm Bill, and thus exempt from RERACA regulation, would require more than just analyzing a "nearly pure issue of law"; rather, it would

---

[3] As the Court has found that remand is appropriate, it need not address the State's offer to remove the paragraphs relating to the 2018 Farm Bill from its complaint. *See* State's Reply, ECF No. 28 at 6. It notes, however, that an amendment that seeks to excise a federal law issue for the purpose of stripping a federal court of subject matter jurisdiction would not result in remand. *See Rockwell Int'l. Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) ("[W]hen a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction."); *Moskovitch v. Danbury Hosp.*, 25 F. Supp. 2d 74, 79 (D. Conn. 1998) ("Ordinarily, a plaintiff cannot defeat removal by amending the complaint to omit the basis for federal jurisdiction.").

7

also require factual investigation into Defendants' process of extracting and concentrating delta-8 THC from hemp, along with the THC content of the Products. Finally, this issue is not capable of resolution without disrupting the federal-state balance, because "considerations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983); *Exxon Mobil*, 83 F.4th at 132; *see also In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 400 (S.D.N.Y. 2014) (finding that, because the state governments in question had brought claims in their respective state courts against the defendant under their respective consumer protection laws and not under any provision of federal law, "the States cannot now be forced to litigate in a forum they did not choose").

Defendants' argument that the State is essentially bringing a RERACA violation, which in turn will require resolution of the question of whether the Intoxicating Hemp Products qualify as "hemp" under federal law, is unavailing. First, as much as Defendants would like to characterize the State's claims as alleging violations of RERACA, the State has not, in fact, alleged a cause of action premised on a violation of RERACA. Instead, it has brought CUTPA claims. Second, the question of whether the Products are hemp, and thus protected in some manner by the 2018 Farm Bill, is a *defense*. It is well-settled that federal law defense does not support removability. *Exxon Mobil*, 83 F.4th at 132 (federal question jurisdiction cannot be triggered "on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue").

Accordingly, the Court grants the State's motion to remand.

## IV. COSTS AND FEES

The State also seeks costs and expenses incurred as a result of litigating Defendants' removal of this case. Although 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," the Supreme Court has made clear that "absent unusual circumstances," such fees "should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter." *Id.* at 140. Because the State's complaint refers to the 2018 Farm Bill and alleges that companies are selling delta-8 products that "exploit the ambiguity in the 2018 Farm Bill," *see* Compl. ¶ 13, it was not objectively unreasonable for Defendants to remove this action.

Therefore, the Court denies the State's request for costs and fees.

## V. CONCLUSION

For the reasons discussed herein, Defendants have not sustained their burden of showing this case is properly removed to federal court. Accordingly, the Court GRANTS the State's motion to remand this action to Connecticut Superior Court, but DENIES its request for costs and fees.

The Clerk is directed to remand this action to Connecticut Superior Court.

**SO ORDERED** at Hartford, Connecticut, this 16th day of October, 2024.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE